Good morning. Thomas Herzog before the petitioners. The petitioners in this case are residents of the communities of Woodside and Portola Valley, California. These petitioners and their friends and neighbors, along with thousands of other persons who live near SFO, have had to endure rising levels of aircraft noise as a result of the FAA's implementation of a program called NorCal MUAPA. Among other things, NorCal MUAPA altered the flight paths going into SFO. In July of 2014, the FAA issued a finding ruling that NorCal MUAPA could not have any significant noise effects on the underlying communities. This finding, which is referred to as a FONSI, is what is challenged on this petition. The Administrative Procedures Act gives this court the authority to review the FAA's actions on the FONSI and set them aside if this court finds that the FAA's actions are arbitrary and capricious. So, I want to focus on what the FAA did. The FAA had a study done, the aviation study, whatever you call it, the aviation study, which is backed up by a technical report, and then there's a ton of data in this administrative record that went into that report. What's your complaint about the report? So, the report concludes that there won't be any appreciable noise increase from this new navigation system. You know, your brief doesn't attack the science. Your brief doesn't say the measure is wrong. So, once more, given that I've read the report, I'm not sure I understand it, but I've read it, it's quite extensive. There's quite extensive amounts of data that back it up. So, in light of all that, why was the actions of the FAA arbitrary and capricious? The report suffered from a fatal error, Your Honor. At the time, the FAA and its expert, ATEM, did the report and concluded that the new flight paths under Port Alabama would not have any significant noise effects. They were missing a key data point that they needed to make that conclusion. And what they were missing is that the FAA had not even yet decided where the new flight paths were going to be. Now, common sense dictates that if you're going to measure the noise effect of an overhead flight on an underlying community, you need to know where the plane is going to land. And when I look at this, the maps of this report, they seem to illustrate flight paths. And didn't the report, and I read the sort of methodology that went into it, didn't the report assume a certain variable flight path and certain amounts of traffic on each path? Sure. I've got a couple things to say about that. Number one, I'd like to focus, Your Honor's attention, on a very specific statement in the report. And this is at ER 652. This is a statement by ACAT Corporation, which is the FAA's expert that prepared the court's report. And I'll quote from it, if I may. To determine projected noise levels on the ground, it is necessary to determine not only how many aircraft are present, but where they fly. End quote. Yes, and earlier in the same document, each flight was assigned to a particular track that was anticipated. And then there was a reading done depending on how many flights would take those. So they couldn't know what would actually happen until it happened, but there was a predictive flight path done. So it's just not correct that they didn't think about it. They did. I mean, that came a few pages before the thing you just read. It's true. They did think about it. But here's the issue. The FAA did not actually make the decision as to what the new flight paths were going to be at the time. It issued a different decision than the one you're attacking here. The decision here was to implement a new navigation system. And they looked at it and said the navigation system would not result in more appreciable or less difficult. These assumptions. If there's a different decision about changing flight paths, that's not really the decision that the FAA made here, was it? I would precisely disagree, Your Honor. That is the core decision that was made here as part of our calcifying. I'm not sure it was. What the FAA said was, we're going to implement a new navigation system. And if we implement that system and recognize that there may be some changes in flight paths and looking at some changes. And here's what they are. Here's what they are. And we have a technical report that shows that they won't appreciably increase noise on the ground. If after that the FAA made a decision to use different flight paths than the ones in the report, that might be a decision that caused some environmental problem. But it seems to me that they necessarily are predicting the future in using this navigation system. So I'm not sure why implementing the navigation system was arbitrary and capricious. That's one of the things they're difficult to do. It wasn't. What was arbitrary and capricious is for them to go ahead and make these noise measurements before they knew where the new flight paths were going to be when their own experts said that that is information that you have. So are you intending that the flight paths that they're now utilizing are different than the ones in the report? I'm intending that the record does not make that clear. That's part of the problem. But if they are the ones in the report, then they're not arbitrary and capricious, are they? Then we have a different problem. And that is that the government is effectively attempting to green-line the project and reserve for itself the right to figure out what that project will be later. I don't understand that at all. Every environmental impact statement requires some prediction and some modeling and some determination about what the future is likely to be. That's the whole point is to try to say, well, what's the likely effect of scenarios A, B, and C? And, of course, they haven't happened yet. And they inputted the number of flights. They inputted the flight times. They inputted the anticipated number of flights for each track. What more could they have done? Well, you disagree that they inputted the flight tracks. Well, they did. They actually, I mean, it's an actual matter. They did. Your disagreement is whether those turned out later to be the actual flight paths. But they inputted some assumed flight paths. Okay. I would direct the court to change that. Yes or no question. Did they or did they not input flight tracks that were anticipated to be the result? They're there. I mean, I believe they may have input flight tracks that they thought later they might use. My question is yes. They input flight paths. They didn't promise when they input them that they would adhere to them in the future. But the report is based on some anticipated flight paths, is it not? We have a statement by their expert in this case, very specifically saying that if you're going to run these noise calculations properly, you have to know what the flight tracks are. But Judge Graber, now let's get back to Judge Graber's question. One has to predict the future in doing environmental assessments or EISs or anything. And so the FAA predicts the future by saying here's our anticipated flight paths. What's wrong with it? What's wrong with that, again, is their expert has said the noise model can't be run properly unless you have the actual flight paths. So it may be the case that they predict the flight paths are going to be X, Y, and Z. And they may run a noise model based upon that. But if they haven't actually decided that those are the flight paths and they subsequently determine that airplanes are going to be flying in some other place, then the noise model clearly wasn't run correctly. So that's why I asked the question before. It seems to me that what you're really attacking is a decision by the FAA not to maintain the flight paths along this model. But you don't have it. But you said yourself I don't know whether they've departed from CODA or not. Well, it's not specifically that I'm saying it. It's that I don't believe the record makes that clear. But that's my question. Does the FAA, in your view, must promise that all flights from now on will adhere to this model when it does its evaluation? If you have their own experts saying. . . No, I know you've told me four times what their experts said. Let's deal with their experts. I want you to know your legal position. Your legal position is that in assessing the noise results of putting in a navigation system, the FAA must not take what you're putting forward and say, these are the flight paths that we intend to use and we will never change them. Well, it's not. It would be a yes to the first part of the question if you had to know the flight paths. Right. But no, we will never change them. Okay. So. . . Who has the burden of demonstrating arbitrariness and capriciousness? What you've said earlier, as I understood it, is that you don't know whether the flight paths that are now being used, that your clients are unhappy about, are the same as or different from the ones that went into the model. Which I would respectfully submit is a problem for the FAA. Why? Because. . . What if they've done exactly. . . You said they have to tell you what they're going to do. And if they are doing what they said, then even under your argument, you have no place to go. So isn't it your burden if that is the legal standard, which I'm not sure it is. If your claim is they have to use the exact flight paths they said they were going to use, but you don't know whether they've deviated from them, how can you make out a claim under your own theory? Well, because we believe that it is their burden. We can perform an environmental assessment to set forth the proposed action. It did. That's my question exactly. If you can't tell us that they've deviated from what the model showed, how can you show that under your own theory? Why is there a problem? I believe the problem is their admission that they hadn't actually settled on what flight paths they wanted to use. So if they used the ones that they forecast. . . If they did, but we would respectfully submit that the government isn't entitled to that kind of free pass. They're entitled to forecast. That's how all these things are done, is with forecasts of the future. They are, but if they were entitled to do that kind of forecasting and environmental assessment, it would only be two pages long. It would be, here is the proposed action, and we promise that what we implement will not have a negative effect on the environment. Let me ask the question slightly differently. What if the FAA said we've determined their future flight paths, here's what they are, and we've analyzed them, we'd have no problem with this report, right? If they ran the noise model. . . Right, right. It's going to be the same report, but we promise these are the flight paths we've chosen. We would have to. You'd have no problem. I would submit that the argument I have made thus far would fail. Okay. So now, let's assume they did that, and a year from now they chose a different flight path. Wouldn't that be the action you wanted to attack? I certainly would, yes. Okay, so in the absence of any evidence that they've chosen a different flight path than the ones in the model, why should we find that their actions in modeling were arbitrary and capricious? Because we believe they should have the burden to tell the public and the community what the new flight path is. We think built into the environmental laws in this area is the concept that the public is going to be fully informed about the changes that are coming. So I just want to go back to my answer to my first question, which is you would have no problem with this report if they promised that these were the new flight paths. The argument I have made thus far would fail. I have another argument. Yeah, you're almost out of time. You can move on, or you can save it for rebuttal. I'll move on very quickly. The other issue we have with the report relates to cumulative impacts. Federal law requires them to do a study looking not just at the noise impacts of what they're doing, but also to look outside of what they're doing and things that might be happening out there in the world that, when combined with what they're doing, might create the greatest noise impact. And they didn't do that. And they admit that in the record at page 144, and this does bear special emphasis because I think they gloss over it a little bit in their brief. What they did do is they took the noise impacts from North California and they took the noise impacts from some other thing occurring out there in the world, and what that is is an increased number of flights into SNO due to consumer demand, and they combined them together. But what they should have done, what they did not do, is they should have then compared that number to the amount of noise existing in SNO before North California. They didn't do that. Instead, what they did is when they combined those noise measurements, they compared them to what we call the no action noise baseline. And the problem here is that the no action noise baseline is not the level of noise. But what other impacts, aside from the airplane flights, did you identify that might have an issue with this problem? The other thing, it was in the letter we wrote, and it is also in our reply brief, opening brief at page 58, is that right now, due to increased consumer demand, the number of people flying in and out of SNO is going down. No, I was asking a question aside from the flights, because one of the things you said was they had to consider the cumulative effects of other things. What are the other things? The other thing is the flights. Aside from flights, aside from flights, are there other things? That is the other thing. Okay, we understand your position. That was what I wanted to make clear. We'll give you a minute for rebuttal when the time is up. May I ask for it? I'm David Sultan. I'm representing the Federal Aviation Administration. And I'll first talk about the use of the model and the allegation that they didn't have all the inputs they needed. As has been pointed out, NEPA is a predictive exercise. It studies proposals for action. And so what the agency had to do here is to predict what the noise impacts would be on the ground and see if there were any significant changes from the old noise pattern. It found that there were not. Now, what goes into the model are a bunch of things. One of them is the flight tracks. The flight tracks come from the procedures that FAA had determined. The procedures, there were 32 new procedures that a design and implementation team had come up with. And these are procedures which utilized the new GPS technology. It knew, FAA knew what those procedures were. In our supplemental excerpts of record, pages one through six, you can see the approvals of the design and implementation team, which were made in January of 2013. Those were then sent to the modeler, that's the ATAC Corporation, and they used those procedures to predict where the tracks will be. Now, airplanes don't follow railroad tracks or roads. They follow corridors and they divert a bit from the expected line up to a model. And so they, based on prior experience, determined where the flight tracks were likely to be based on these procedures and then took all the other data about, you know, the weights of the planes, what kinds of thrust they would be using, was it day or night, those kinds of things, and determined through the model what the noise in those planes would be. That's the question I asked here. Let's assume that these are all predictive, obviously, because there's no guarantee that the planes will always be along these flight paths. Let's assume that as a matter of practice, it turns out three years later, the planes are flying in a, because of the introduction of the new navigation system, the planes are flying in a pattern that I anticipated in this report and causing lots of noise in Portola Valley or some other place. What remedy does the residents have? Do they attack the change in the flight paths? What do they do? Well, they, because you predict it now, they won't have a problem. But maybe they do because the planes are not flying where they were predicted to. So the remedy is to go to FAA and say, look, you guys need to change their procedure because the pilots aren't following it. And then if FAA renders a final decision, you know, you can always petition the agency for action. If the agency denies the petition and says we're not going to add more, or they act in a way you don't like, then you challenge them. And, in fact, one reason that these new procedures were put in place was that the old procedures, the radar-based procedures, in many cases the pilots weren't following them. And so this was an effort to get the actual flight tracks more lined up and in a place where the pilots could be predicted to follow them more closely, but you'll never get there. I have a completely different question if my colleagues are dealing with that area. There is, in the record, in response number six, page 184 of the excerpts of record, and this responded to some questions about how many flights would be using the different pathways. And in the middle of that response, it says, the draft EA did not disclose information such as number of flights. What's the reason for that, and does it make any difference that that was not disclosed? So the reason for that is because you can't really predict. Pilots can use the old procedures rather than these new procedures. And the predictions here are for 2014 and 2019. They're likely to be changes in when airlines decide to fly other routes. So if I wanted to attack the model, I'm the airplane pilot, and I want to attack the model, I want to show that it used unrealistic assumptions of how many flights. How would it be able to do that in the absence of knowledge about how many flights there were? Can I find that someplace in this record? If you go to the ATAC technical noise report, a lot of the data inputs are there, but what the purpose of HIPAA is, you know, to show the environmental impact, which is the noise impact. And so the real guts of this environmental assessment is in the DNL. No, I understand that. My question is slightly different. Obviously, if only one flight goes over my house each day, that's a different level of noise than if 100 flights go over my house each day. And so my question is, can you, in this record, so on an EA itself, can one determine how many flights the report assumes go in a path each day? You would have to go very deep into the record, I think, to get that sort of. But is the technical data there somewhere? Yeah, the technical data is in the record on the flash drive that we provided. It uses target software to take all these various inputs. Yeah, but they have an expert of their own, the petitioners in this case or someone in their shoes. In spite of the fact that it wasn't in the EA, is it somewhere that an expert could figure it out? Yes, I think data like the expected number of flights, that's just a prediction. Right. Is that sufficient in the record? Could be found in the target's data, is my understanding of that. But do the petitioners have that information? Well, I mean, the petitioners have focused on the one issue of flight tracks. Yeah, the flight tracks, I think, are adequately displayed in the EA itself. The question is, did the petitioners have the information as to the number of flights in a particular path? They could have requested that, but I don't know that it's possible. They should. That's the reason for the response. What the agency said was we're not going to display it. It's not in the EA because you can look at the maps. Something like that. To that effect. It shows the tracks, but does it show the intensity of using the tracks? No, the maps don't show the intensity of use, but the readouts on the noise reflect the average of all of these factors. And so the bottom line is, you know, is there more noise? And the EA displays that. It says, you know, in 2014, for this particular block, census block, there are over 100,000 in the EA. You could expect an increase or a decrease of 0.6 decibels for entries. I just want to go back to Deirdre's question because I'm not sure. I think you said yes, the information. I mean, I'll hit the record, but if I were in the shoes of the petitioners in this case and I wanted to figure out how many flights were consumed along a specific track, that's a critical assumption in order to come up with the noise that the flights would produce. Would I be able to find that? Yes or no? Would it be possible to record it? I'm sorry, I haven't dived into that level of detail because the petitioners, in their briefs anyway, did not focus on raising that question. They're not raising it. I raised it. We're asking the question, maybe they don't raise it. But they have focused on the flight tracks, and I think that that is adequately displayed in the EA. But I think really what this court has considered noise cases previously due to changes in flight, procedures, flight plans in the Morocco band case and in the Seattle community case, and in both has found that this procedure of showing the average noise changes on the ground through the DNL methodology, which takes a whole year's worth of data, and takes an average of that and says, you know, on average day, here's what you would expect in terms of noise, and has found that that type of methodology is adequate for NEPA purposes. And so that is what FAA did here in the name of all of its efforts at showing what the DNLs were for all these various points, and the FAA has significance levels for, you know, what is a significant impact, and have found that for none of these census plots was there a significant change in noise that would require an EIS, and this court in the Morocco band and Seattle community cases has found that those significant thresholds are fine. They're not arguably capricious, and the court has deferred to FAA's analysis in those respects. So I think the noise modeling issues here are governed by those earlier cases. With respect to cumulative impacts, I think the Barnes case is very important, which from a couple of years ago from this case involving the Hillsborough Airport, there was a cumulative impacts challenge brought in Barnes, and what the court said was, number one, the petitioners did not, in their comments on the draft DA in that case, say what they thought the cumulative impacts were going to come from that were going to be added to the impacts of the project. So they didn't bring it to the agency's attention. I think that's the same situation here. And B, the court said that what cumulative impacts are, are impacts that are added from something else, some current or future project that has impacts, that would add to these impacts, cause an accumulation of impacts, and the petitioners have not alluded to any other action that is going to accumulate. This DA looked at all of the flight, relevant flight procedures coming into these four airports, and looked at all of the noise impacts from those procedures. Assumed a growth in number of flights over a period of time. They made a wrong assumption, but put that aside. Did assume a growth in the number of flights. Did assume a growth in number of flights, and so considered that up to 2019. That's the standard methodology. The FAA uses, the EA does have a cumulative impacts analysis section, 143 to 146 of the ER, and there the FAA looked at other possible projects and said, well, we've got a runway safety project going to SFO, going to make some changes to the runway, that might have noise impacts, so we'll consider that as a potential cumulative impact. But we don't think it will accumulate like the one in Oakland. But no one, including petitioners, brought to the agency's attention anything else out there that might accumulate with this project. And so I think any objection is waived on that point, but in any event, I think the cumulative impacts analysis is sort of consistent with NEPA here. So, with regard to the assessments of the growth in demand, again, this court has considered that question in the Ronwell Band case and Seattle Community case, and in both cases, again, found that the assumption that growth in demand, that growth in flights is caused by market demand and capacity enhancements on the ground, which is the NEPA's standard of assessment, and not caused by procedural changes, which are aimed at making safer and more efficient air traffic, that assumption is not arbitrary, so I think, again, that question has been already determined by this court. Unless there are other questions. I don't believe so. Mr. Christy, do you have a comment? I would like to speak to the issue of cumulative impacts. Now, one of the points the FAA made is that, according to them, we did not point to some other thing out there in the world that they should have analyzed for cumulative impacts. That is absolutely false, and I'll tell you exactly where it is. It's at ER 371. It's in our letter that we wrote. Now, that other thing that is going on, again, is a rise in the number of flights due to consumer demand. That was already in their document. Why is that something outside the model? I'm glad you raised that question because that is a critical point that has been glossed over. They say again and again and again that although their noise calculations do take a look at the increased number of flights, that increase in number of flights is actually something that is occurring completely outside of North Carolina. So it is another thing that they should have looked at. Then you get back to the last point you were talking about, which is having previously said that the FAA is not arbitrary and capricious in only looking at market demand, consumer demand, market forces, in terms of increasing flights and not saying that per se common changes will themselves increase the number of flights. Oh, I agree with that, but that's outside the context of cumulative impacts, which is a completely separate issue. I understand, but the only cumulative, they identify more flights, right? Right. And you're saying, as I read your brief, well, what they didn't do is consider that implementing this navigation system itself will lead to more flights. Is that your contention? Not on the cumulative impacts point. Okay, so where do the impacts come from other than from the flights? Oh, the other impacts are North Ellawalpa, which changes the flight paths, and they are very, very specific in their brief. But the analysis, it's just dizzying because the analysis does exactly what you want it to do. It says we're changing the flight paths like this and we're assuming a lot more flights because more and more people want to fly, and so we're going to think about all that and come up with an answer. So haven't they done exactly what you just asked them to do? No, they didn't do the last step. They did do what you said. They looked at the noise impact from North Ellawalpa. They looked at the noise impact from the new flights. They took them together. Here's what they didn't do and what they should have done to do the cumulative impacts analysis properly. They should have taken that number and they should have compared it to existing noise levels before North Ellawalpa to see what the difference in noise was. What they did when they added those two together, the North Ellawalpa and the increased flights, instead of comparing it to existing noise levels before North Ellawalpa, they compared it to something they refer to as a no-action noise baseline, but the no-action noise baseline itself included the noise from the increased number of flights. So rather than measure... But those increased number of flights would have existed because they were caused by market forces. Whether or not North Ellawalpa were implemented would have not... Absolutely, and I would refer to the Grand Canyon Trust case for the point that whether or not they're going to happen doesn't make any difference. You're required to put them together and look at the cumulative impact and compare that with noise conditions that exist at the current time because the whole point of the cumulative impacts analysis is to recognize that the government's actions don't take place in a vacuum. They take place in a situation in which, even if what they are doing might not have a significant impact on noise, what they are doing combined with what other people, including non-government actors and consumers, are doing might jointly create a significant... So how do you understand your position? The case just started, you did submit it.
judges: Graber, Hurwitz, Foote